OVERTON, J.
 

 On February 2, 1926, the Natchitoches parish school board passed an ordinance calling a special election to be held on March 15, 1926, in school district No. 10 of the parish of Natchitoches, for the purpose of submitting to the qualified taxpayers of the district the proposition to authorize the levy of a special tax of 2% mills on the dollar on the assessed valuation of all property subject to taxation in the district for the period of 3 years, the proceeds of the tax to be used in giving additional aid ■ to the public schools of the district. The ordinance provided for three polling places, to wit, one at Cloutierville, one at Marco, and one at Chopin, and also made provision for the machinery of election. The ordinance was duly published, together with the proclamation of the president of the school board, giving notice of the election, in the official journal of the board, beginning with the issue of February 5, 1926, and in another paper, also designated as the official journal, beginning with the issue of February 11, 1926. On March 16, 1926, the day named for that purpose in the ordinance calling the election and in the proclamation issued thereunder, the school board met for the purpose of opening the ballot boxes, examining and counting the ballots in number and amount, examining and canvassing the returns and declaring the result, as provided by section 15 of Act 256 of 1910. The board made a procés verbal- of its proceedings, according to section 15 of said act, in which appears the following:
 

 “The result of said count was 12 ballots and $66,520 in favor of said proposition and 1 ballot and $1,410 against said proposition; and, therefore, the majority in both number and amount east by the property taxpayers of said school district No. 10, in the parish of Natchitoches, in said election being in favor thereof; and,
 

 “At the same time and place we did. canvass the returns as evidenced by the duplicate tally sheets and the .compiled statements, the correctness of both being sworn to by the commissioners, according to- law, and finding also that the returns indicated a majority in both number
 
 *587
 
 and amount of property in favor of said proposition.
 

 “Therefore, we declare that the result of the said election is in favor of the
 

 “Proposition to levy a two and one-half mills ($.002%) special tax on all the property subject to taxation in school district No. 10, parish of Natchitoches, La., annually, for a period of 3 years, for the purpose of giving additional support to the public schools of the said school district.”
 

 The result of the election was promulgated. Within 60 days after the promulgation of the result, the plaintiffs herein, 12 in number, brought this suit for the purpose of annulling the election held, and thereby defeating the tax. The petition sets forth various grounds of nullity, only some of which, the more serious, are discussed by plaintiffs. We have, however, examined those not discussed, but do not find them well founded. Those that are discussed will be stated as we take them up for consideration.
 

 One of the grounds of attack is that no election was held at the Marco and Ohopin precincts, though these were two of the three precincts at which the election was to ,be held, and that no tally sheets, oaths of commissioners, ballots, or list of voters were filed from those precincts with the school board, which was the authority ordering the election, and that no duplicate tally sheets and duplicate compiled statements were filed from those voting places with the clerk of the district court. It is also contended in this connection that the school board did not keep the ballots, the tally sheets, the list of those voting, nor the remaining returns of the election, for the 3 months required by law, thereby depriving those who desired to contest the election of the proper means of doing so. ■
 

 ' The law requires that, after the commissioners swear to the correctness of the numbered list of voters, the duplicate tally sheets, and duplicate compiled statements, they shall deposit, at each polling place, the ballots, the registrar’s list of voters, the numbered list of taxpayers voting, one duplicate tally sheet and one duplicate compiled statement, in tha ballot box, immediately seal the box, and. within 48 hours after the closing of the polls, deliver the sealed ballot box with its contents to the authority ordering the election, and that the commissioners shall deliver within the same delay the remaining duplicate tally sheet and compiled statement, from each polling place, to the clerk of the district court, whose duty it is made to file them in his office. Section 14 of Act 256 of 1910. Section 16 of this act makes it the duty of the custodian of the archives of the authority ordering the election to preserve the ballots and other returns thereof for 3 months from the date of the promulgation of the election.
 

 The only returns to be found in the record are a numbered list of those voting and a duplicate compiled statement, and these are from the Cloutierville precinct, and were offered in evidence by plaintiffs. We cannot infer from this circumstance that the returns from all three boxes were not made, as provided by the statute, or were not preserved for the required time, or were not extant at the time of the trial of this ease. In fact, the custodian of the records of the school board testified that he had the ballots, though does not say whether they were the ballots cast at all three polls, though presumably, in the absence of anything qualifying his statement, they were. The presumption is that duplicates of the returns and the registrar’s list of voters were in the ballot boxes with the ballots, where the law directs the commissioners to place them. Had plaintiffs had the ballot boxes produced and opened, the presumption is that they would have found the registrar’s lists of voters and duplicates of the remaining returns there. We are unable'to hold that they would not nor are we able to hold, on the showing made, that the returns from all the precincts, required by the statute to be made to the
 
 *589
 
 clerk of court, were not made to Mm. There is no showing here that the election was not held at all three precincts, or that the returns from all three were nbt made, or were not preserved. The record does not disclose that the polls were not opened save in one precinct, but contains evidence to the contrary. The returns from the Cloutierville box, filed in evidence by plaintiffs, show that 10 ballots were cast at that box; that 8 of these, showing assessed valuations aggregating $19,360, were cast in favor of the tax, and that 1 of the 10, showing an assessed valuation of $1,-410, was cast against the tax. The ballot necessary to make the tenth one, the record discloses, was spoiled, and therefore not counted. It will be observed that this accounts
 
 for
 
 only 10 votes, and for an assessed valuation voted of only $20,770. On the other hand the proees verbal, prepared by the school board, the authority ordering the election, showing, as provided by statute, how the result of the election was ascertained, discloses that the ballot boxes used in the election and returned by the commissioners were opened, the ballots counted, and the returns, as evidenced by the duplicate tally sheets and compiled statements, canvassed, and that the count and canvass disclosed that 12 ballots, showing assessed valuations aggregating $66,520, were cast in favor of the tax, and 1 ballot, showing an assessed valuation of $1,410 was cast against it. It will be observed that the proees verbal does not speak of the ballot box, but of the ballot boxes, nor does it speak of the duplicate tally sheet and compiled statement, but of tlie duplicate tally sheets and duplicate compiled statements, using the plural in each instance, and it will also be observed that the proees verbal shows that more votes were cast, both in number and amount, than the returns from the Cloutierville precinct show were cast at that precinct, thus clearly showing that the polls were opened at one or both of the other polling places, the presumption being at both. If the polls were not opened at any one of the precincts, the burden was on plaintiffs to establish that fact. They have not done so. The presumption is that the commissioners did their duty and opened the polls at all three polling places, and made their returns. Our conclusion is that the position here taken by plaintiffs is not established.
 

 Another ground urged by plaintiffs for annulling the election, which in our view is the most serious one urged by them, is that a sufficient time within which to register was not allowed those entitled to qualify in order to vote. It will be recalled that the election was ordered on February 2, 1926, to be held on March 15, 1926, and that notice of the election was first published on February 5, 1926. The law required an entirely new registration for the year 1926, to voté at the election, and the law also required the registration
 
 to be
 
 closed 30 days preceding the election. The law with reference to registration and the duties of the registrar reads as follows:
 

 “The registrar of voters for each and every parish throughout the state, parish of Orleans excepted, shall make a new and complete registration of the qualified voters of their respective parishes every four years, commencing on the second day of January, 1922. In all parishes containing a municipality of twelve thousand inhabitants or over, the registrar of said parish shall keep his office open daily, Sundays and legal holidays excepted, from 9 a. m. to 1 p. m., and from 2 p. m., to. 6 p. m., for the registration of all legal voters. In every other, parish, he shall be required to keep his office open only on Fridays and Saturdays of each week, or such other two days and such additional days, Sundays and legal holidays excepted, as may be fixed by the police jury of his parish, for the registration of all legal voters, except in the thirty days immediately preceding the closing of the registration rolls for any general or special election or primary, and during said period he shall keep his office open daily, Sundays and legal holidays excepted, for the same purpose. The office hours in any event shall be from 9 a. m. to 1 p. m., and from 2 p. m. to 6 p. m. Nothing in this section included shall be construed as applying to the parish of Orleans. He shall keep his oifice at the courthouse. In
 
 *591
 
 every year in which a general state election is held or a primary election is held for state officers or representatives to the Congress of the United States he shall, seventy days before the closing of the registration, establish his office, for at least one day, at or near each polling place; provided that he shall during the last thirty days of such period, Sundays and legal holidays excepted, keep his office open as herein provided. He shall, during said sixty days publish at the expense of the parish, in the official journal thereof, if there be one, a list of the places of registration and the length of time samp shall remain open; if there be no official journal in any parish, the registrar of voters shall post the list provided for above at or near the polling precinct, provided that no person shall be permitted to register within thirty days of any general or primary election held in such parish.” Act No. 122 of 1921 (Extra Session) § 15.
 

 While the closing words of the foregoing quotation seem to prohibit the registration of voters within 30 days of only general and primary elections, and not special elections, yet when these words are construed w'ith the preceding clause, in the quotation, requiring the registrar to keep his office open daily, Sundays and legal holidays excepted, for the “thirty days immediately' preceding the closing of the registration rolls for any general or special election or primary,” the intention of the lawmaker seems to be that no one shall be permitted to register during the 30 days immediately preceding not only a general or primary election, but also a special election. Hence it would seem that those residing in the district, entitled- to qualify as voters, could not register during the 30 days immediately preceding March 15,1926, the day fixed for the election. They had, however, at least every Friday and-- Saturday, with the exception of one Friday, which was a legal holiday, from January 1,1926, to February 5, 1926, the date of the first publication of the notice of the special election, in which to register, these being' the days, even when there is no election approaching,, in which the registrar’s office, in the parish of \Natchitoches,. is required to be open, and since the registrar, as well as the electors, may be said to have acquired knowledge of the approaching election by the publication of the first notice thereof, on February 5, 1926, the electors also had the 6 legal days intervening between that date and February 13, 1926, the day on which the registration for the district was required to be closed, in which to register, for the registrar was required to keep his office open daily during those 6 days. As a practical proposition, we think that this was sufficient time for the approximately 240 voters in the district to register, even assuming that all of them, as property taxpayers, were entitled, on registering, to vote in the district. But it may be urged that these voters were entitled, by virtue of the law, to the 30 days, Sundays and legal holidays excepted, immediately preceding the closing of the registration for the election, in which to register, since the law requires that the registrar’s office be opened for the 30 days, Sundays and legal holidays excepted, immediately preceding the closing of the registration for an election. However, in an election of this nature, the only means that the registrar has of knowing of the election, or that the voters, themselves, have of knowing of it, is when notice that the election has been ordered is published. To bring this notice to the registrar, and especially to the voters, in order to enable the latter to take advantage of the 30-day period, it would be necessary, in the absence of any other provision, that notice of the election be published something more than 60 days before the date for holding the election. But the law .does not require that the notice of election be thus published. What the law requires with reference to publication-is that, after the resolution ordering the election is passed, notice of the election shall be given for 30 days by -publication in a weekly newspaper once a week, for 4 weeks, and if there---be no news
 
 *593
 
 paper in the parish, then by posting the notice for that time. Section 3 of Act 256 of 1910. Construing the two provisions together, what is meant is that the registrar, in such elections as the present, shall keep his office open for the 30 days immediately preceding the closing of the registration, when he learns of the election in time to do so, after learning of it, during what remains of that period. The law is satisfied if the voters have had a reasonable opportunity to register. In this instance, we think they have. In our view, the case of Endom v. City of Monroe, 112 La. 779, 36 So. 681, is not applicable here, further than that it announces the principle that voters must have a reasonable opportunity in which to register. That was a case interpreting and applying a provision of the charter of Monroe, which required a registration “thirty legal days prior to any city election.” The court found that the registrar’s office had not been kept open during that time, and annulled the election.
 

 The trial judge rendered judgment in the presént case, annulling the election. The judgment, we think, is erroneous.
 

 Eor the reasons assigned, the judgment is annulled and set aside, and judgment is now rendered rejecting plaintiffs’ demands, plaintiffs to pay the costs in both courts.